UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| JOHN MARTIN RUIZ, SR., | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 2:17-cv-81 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, John Martin Ruiz, Sr., on February 22, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, John Martin Ruiz, Sr., filed an application for Disability Insurance Benefits on September 15, 2011, alleging a disability onset date of July 24, 2011. (Tr. 893). The Disability Determination Bureau denied Ruiz's application initially and again on reconsideration. (Tr. 893). Ruiz subsequently filed a timely request for a hearing on June 24, 2012. (Tr. 893). A hearing was held on June 21, 2013, before Administrative Law Judge (ALJ) Henry Kramzyk, and the ALJ issued an unfavorable decision on September 4, 2013. (Tr. 893). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 893). Ruiz filed a Complaint in the United States District Court on April 25, 2014. (Tr. 893). Magistrate Judge John Martin remanded the ALJ's decision on September 17, 2015. (Tr. 893). The Appeals Council vacated the final decision of the Commissioner, and remanded the case to an ALJ for further proceedings consistent with the Order of the court. (Tr. 894). The ALJ,

William E. Sampson, held a video hearing on September 27, 2016, and issued an unfavorable decision on October 25, 2016. (Tr. 893-910). Impartial Vocational Expert (VE), Clifford M. Brady, testified at the hearing. (Tr. 894).

Ruiz filed a Title XVI application for Supplemental Security Income on January 17, 2014. (Tr. 893). In an initial determination, Ruiz was found disabled beginning January 17, 2014, based on his impairments equaling Listing 8.04. (Tr. 893). The Appeals Council reviewed the favorable determination and concluded that it was supported by substantial evidence, and affirmed the initial determination finding Ruiz disabled. (Tr. 894).

The ALJ found that Ruiz met the insured status requirements of the Social Security Act on March 31, 2012. (Tr. 896). At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Ruiz had not engaged in substantial gainful activity during the period from his alleged onset date of July 24, 2011, through his date last insured of March 31, 2012. (Tr. 896). At step two, the ALJ determined that Ruiz had the following severe impairments: obesity, diabetes mellitus, meniscal tear and degenerative changes of the right knee status-post surgery, degenerative changes to the lumbar spine, diverticulitis of the colon, dysthymia, and obsessive compulsive disorder. (Tr. 896).

At step three, the ALJ concluded that through the date last insured Ruiz did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 897). Specifically, the ALJ determined that Ruiz's physical impairments or combination of impairments did not meet or medically equal one of the listed impairments, including but not limited to Listings 1.02, 1.04, and 5.06. (Tr. 897). The ALJ considered Ruiz's obesity in relation to the musculoskeletal, respiratory, and cardiovascular body systems listings. (Tr. 898). The ALJ concluded that based on the totality of evidence Ruiz did

not meet or medically equal any of the listed impairments during the period at issue, but that his limitations warranted reductions to his residual functional capacity. (Tr. 898).

The ALJ concluded that the severity of Ruiz's mental impairments, considered singly and in combination, did not meet or medically equal Listings 12.04 and 12.08. (Tr. 898). The ALJ considered the paragraph B criteria for mental impairments, which must result in at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 898). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each lasting for at least two weeks. (Tr. 898).

The ALJ determined that Ruiz had mild restriction in daily living activities. (Tr. 899). Ruiz denied that he had any difficulty tending to his personal care. (Tr. 899). However, the ALJ noted that Ruiz's wife did most of the cooking and that Ruiz relied on his family for physical assistance. (Tr. 899). The ALJ indicated that any limitations affecting Ruiz's ability to engage in daily living activities were related to his physical complaints, rather than his mental limitations. (Tr. 899).

Next, the ALJ concluded that Ruiz had moderate difficulties in social functioning. (Tr. 899). The ALJ noted that Ruiz indicated that he rarely left the comforts of his home and that if he did, it was with his wife or children. (Tr. 899).

The ALJ found that Ruiz had moderate difficulties with concentration, persistence, or pace. (Tr. 899). Ruiz indicated that he watched television and that he performed chores around the house or helped others perform the chores. (Tr. 899). The ALJ indicated that Ruiz had not

3

experienced any episodes of decompensation which had been of extended duration. (Tr. 899). Moreover, the ALJ determined that regarding Listing 12.04, Ruiz did not meet the criteria for paragraph C. (Tr. 899).

The ALJ then assessed Ruiz's residual functional capacity (RFC) through the date last insured as follows:

> The claimant has the residual functional capacity to lift and carry up to 10 pounds occasionally, lesser weights more frequently, stand and/or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant was to never climb ladders, ropes, or scaffolds, knelt, or crawled, but could have occasionally balanced, stooped, crouched, or climbed ramps and stairs. He was to avoid concentrated exposure to wet, slippery surfaces and hazards such as dangerous moving machinery and unprotected heights. From a mental perspective, the claimant was limited to simple, routine, repetitive tasks, with only occasional interaction with coworkers, supervisors, or the public. He could not perform the duties of production paced work, and was limited to working in an environment with few workplace changes.

(Tr. 899-900). The ALJ explained that in considering Ruiz's symptoms he followed a two-step process. (Tr. 900). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical and laboratory diagnostic technique that reasonably could be expected to produce Ruiz's pain or other symptoms. (Tr. 900). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Ruiz's functioning. (Tr. 900).

At the hearing, Ruiz testified regarding his employment background. (Tr. 901). He indicated that he had difficulty working. (Tr. 901). Ruiz testified that he had stomach pain, as well as knee and back pain, stomach cramps, stiffness, aching, and throbbing pain, and that he was absent from work about once or twice a month around the time that he applied for disability. (Tr. 901). Counsel for Ruiz at the hearing discussed Ruiz's surgical history, including the colonoscopy and installation of a colostomy bag, with subsequent MRSA development, left knee

4

replacement surgery, and increased mental incapacity. (Tr. 901). However, the ALJ noted that the record was restricted to considerations of the period at issue. (Tr. 901). The ALJ acknowledged that Ruiz's condition deteriorated, which supported a subsequent finding of disability approximately 18 months after the date last insured. (Tr. 901). The ALJ determined that there were no supportive findings in record that showed an earlier date of disability. (Tr. 901).

Ruiz's primary care physician was Satish Patel, M.D. (Tr. 902). Ruiz underwent an MRI based on his complaints of pain, which showed a Grade III tear of the body and posterior horn of the medial meniscus with some degeneration and mild osteoarthritis, as well as some diffuse bulging at L4-S1 with mild narrowing at the central canal and mild diffuse bulging at L3-L4 of the lumbar spine. (Tr. 902). Ruiz also showed some signs consistent with diverticulitis. (Tr. 902). On September 20, 2011, Dr. Patel recommended that Ruiz be seen at the hospital the following day for further treatment regarding the range of motion in his knees. (Tr. 902). The following day, Ruiz reported abdominal pain at the hospital and was kept for observation overnight. (Tr. 903). However, the ALJ noted that Ruiz did not report any complaints of knee pain. (Tr. 903).

Ruiz returned to Dr. Patel approximately two months later on November 15, 2011, to discuss his diabetes. (Tr. 904). The ALJ noted that there were no complaints of knee or abdominal pain. (Tr. 904). On November 16, 2011, Ruiz was referred to physician Kanayo Odeluga, M.D. for a comprehensive physical consultative evaluation. (Tr. 903). Ruiz indicated to Dr. Odeluga that he was scheduled for surgical knee repair in two weeks. (Tr. 903). However, the ALJ noted that Ruiz had arthroscopic knee surgery four months after he allegedly indicated that he was scheduled to have the surgery. (Tr. 905).

On February 7, 2012, Ruiz returned to see Dr. Patel with complaints of lower back pain. (Tr. 904). Dr. Patel recommended that he return to the hospital for further evaluation. (Tr. 904). However, the ALJ noted that Ruiz had failed to report to the hospital but that he returned to see Dr. Patel a week later. (Tr. 904). Ruiz indicated to Dr. Patel at that time that he did not want pain medicine. (Tr. 904). In March 2012, Ruiz reported to Wayel Kaakaji, M.D. who ordered a CT scan of Ruiz's lumbar spine and EMG testing. (Tr. 904). The CT scan indicated mild degenerative changes, and EMG testing produced normal results. (Tr. 904).

The ALJ has concluded that from Ruiz's alleged onset date of July 24, 2011 through his date last insured of March 12, 2012, he suffered from some physical and mental issues that necessitated reasonable restrictions in the RFC. (Tr. 905). The ALJ indicated that no physical or mental restrictions were imposed on Ruiz by any treating medical professional or that were necessitated by an objective finding that would indicate the need for greater limitations in the RFC. (Tr. 906). The ALJ noted that Ruiz's gait was fairly normal after surgery, his complaints of back pain lasted a short period, his mental health treatment was non-existent, and his subjective allegations were unsupported. (Tr. 905).

The ALJ indicated that after considering the evidence, Ruiz's medically determinable impairments reasonably could be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects are not fully consistent with the medical evidence and other evidence in the record. (Tr. 906). The ALJ noted that Ruiz's complaints of debilitating issues were not consistent throughout the record. (Tr. 906). Specifically, the ALJ identified that Ruiz's observed functional behavior at the consultative examination and his own admission that he mowed the lawn in the Function Report were not consistent with his complaints of debilitating back pain. (Tr. 906). The ALJ indicated that Ruiz

6

had poor compliance with treatment, delayed procedure, and refused to take pain medication. (Tr. 906). Also, the ALJ noted that limited records provided support that Ruiz engaged in physical therapy, as recommended. (Tr. 906).

Ruiz's wife, Christina Ruiz, completed a Third Party Function Report. (Tr. 907). The ALJ indicated that he took into account her potential bias and found that she was generally credible in her opinions and gave them some weight. (Tr. 907). However, the ALJ gave little weight to Mrs. Ruiz's opinions regarding limitations that conflicted with evidence in the record and the RFC. (Tr. 907).

At step four, the ALJ found that through the date last insured Ruiz was unable to perform any past relevant work. (Tr. 908). Considering Ruiz's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that Ruiz could perform, including final assembler (44,500 nationally), product stuffer (38,000 nationally), and eye ware polisher (18,500 nationally). (Tr. 908-909).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28

7

L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ

reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f)**.

Ruiz has argued that the ALJ violated the law of case doctrine by not properly assessing his subjective complaints consistent with the remand order. Moreover, Ruiz has indicated that the ALJ failed to explain his reasoning for rejecting his subjective symptom allegations. In its September 17, 2015, Opinion and Order remanding this case on its first appeal, the court held that the ALJ's credibility analysis was flawed. The court indicated that the two instances of non-compliance cited by the ALJ did not demonstrate a significant history of non-compliance with medical treatment, and that the ALJ had failed to seek an explanation for the lack of medical care. ***Ruiz v. Colvin,*** 2015 WL 5474556, at *5 (N.D. Ind. 2015). The court directed the ALJ to conduct a new credibility analysis in compliance with the applicable rules and regulations. ***Ruiz,*** 2015 WL 5474556, at *5.

The law of the case doctrine dictates that "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." ***Key v. Sullivan***, 925 F.2d 1056, 1060 (7th Cir. 1991). It requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart.

*Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). As directed by the court, the ALJ conducted a new credibility analysis. However, that credibility analysis is deficient.

On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* **SSR 16-3p,** 2016 WL 1237954 (Mar. 28, 2016). Under **SSR 16-3p,** an ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility." First, the ALJ must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. **SSR 16-3p,** 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." **SSR 16-3p,** 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. **SSR 16-3p,** 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. **SSR 16-3p,** 2016 WL 1119029, at *4, 9.

In any event, a court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, reviewing courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003). "It is only when the ALJ's determination lacks any explanation or support that the court will declare it to be patently wrong ... and deserving of reversal." *Elder*, 529 F.3d at 413–14 (internal quotation marks and citations omitted).

The first paragraph of the ALJ's decision recites the usual boilerplate credibility language, concluding that Ruiz's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not fully consistent" with the evidence. (Tr. 906). Ruiz has argued that the phrase "not fully consistent" is not an accurate recitation of the law. However, while it is true that Ruiz's subjective testimony regarding his level of pain does not have to be "fully consistent" with the objective medical evidence and should not necessarily be discounted if it is not, it is also well established, as the Seventh Circuit has explained, that the courts must defer to an ALJ's credibility finding that is not patently wrong. **Curvin v. Colvin**, 778 F.3d 645, 651 (7th Cir. 2015).

The ALJ determined that Ruiz's complaints of debilitating issues were not consistent throughout the record. Specifically, the ALJ indicated that Ruiz's complaints of back pain were not consistent considering his observed normal behavior at the consultative examination and his own admission that he mowed the lawn. (Tr. 906). Moreover, the ALJ indicated that, "there were issues of poor compliance with treatment, delayed procedures, and refusal to take medication, although later records affirm relief from these avenues." (Tr. 906). Also, physical therapy recommendations were made on more than one occasion but limited records provided support that Ruiz followed up with these recommendations. (Tr. 906). To conclude, the ALJ found that Ruiz's overall allegations were not congruent with the objective findings in the record. (Tr. 906).

Ruiz has argued that even if his statements were not congruent with the objective findings in the record, his statements may not be disregarded solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged. **SSR 16-**

**3p,** 2016 WL 1119029, *5; **Hall v. Colvin,** 778 F.3d 688, 691 (7th Cir. 2015). Therefore, objective medical evidence is just one of the many factors that the ALJ must consider. Other evidence that the ALJ should consider includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms. **SSR 16-3p,** 2016 WL 1119029, *5.

Ruiz has argued that the ALJ's reliance on non-compliance similarly is flawed like the first appeal. When considering non-compliance with treatment as a factor in determining whether a claimant's statements regarding his symptoms were credible, an ALJ also is required to make a determination about whether non-compliance with treatment was justified and develop the record accordingly. A claimant's failure to follow a treatment plan can decrease credibility when a claimant "does not have a good reason for the failure … of treatment," but for the ALJ to draw inferences about the claimant's condition from a failure to comply, an ALJ must first discern from the claimant the reasons for non-compliance. *See **Craft v. Astrue***, 539 F.3d 668, 679 (7th Cir. 2008) (failure to comply due to inability to pay for treatment, for example, may be an acceptable reason for non-compliance).

Neither the ALJ's decision nor the Commissioner's response included any possible explanation for Ruiz's non-compliance. Accordingly, the ALJ should not have discounted Ruiz's reports of his symptoms on that basis. The court will remand for additional proceedings so that the ALJ can incorporate Ruiz's explanation for avoiding treatment into his assessment of Ruiz's testimony.

Additionally, Ruiz contends that the ALJ erred by not assigning greater weight to his wife's Third Party Function Report. The ALJ assigned some weight to Mrs. Ruiz's opinions. The ALJ indicated that he took into account the potential bias because of the familial relationship

between Ruiz and his wife. The ALJ found that Mrs. Ruiz was generally credible in her opinions, including her indications about Ruiz's retained physical abilities. However, the ALJ gave little weight to Mrs. Ruiz's opinions that conflicted with evidence in the record and the residual functional capacity, including any opinions that related to Ruiz's subjective levels of pain.

The Commissioner has argued that the consistency of Mrs. Ruiz's statements with other evidence is a relevant factor and that the ALJ was correct in considering these inconsistencies. The ALJ is not required to address every piece of evidence, but he must provide a "logical bridge" between the evidence and his conclusions. **Getch v. Astrue**, 539 F.3d 473, 480 (7th Cir. 2008). However, the ALJ has not explained what inconsistencies he found between Mrs. Ruiz's observations and the record. *See* **Garcia v. Colvin,** 741 F.3d 758, 761 (7th Cir. 2013) ("Rejecting "[t]he implication is that if a plaintiff or a defendant (or a relative of either or a fiancé) testifies in a case, the testimony must automatically be discounted for bias ... The administrative law judge should have made clear whether he believed the fiancée's testimony or not, or which part he believed, or whether he had no idea how much of what she said was worthy of belief.").

Ruiz also has argued that the ALJ's statement, "Mrs. Ruiz's opinions regarding the claimant's limitations conflicts with the evidence of record and the residual functional capacity, those inconsistent statements are given little weight," applies backwards reasoning as prohibited in **Bjornson v. Astrue,** 671 F.3d 640, 645 (7th Cir. 2012). A claimant's residual functional capacity finding comes later in an ALJ's decision, not before assessing the claimant's testimony regarding the intensity, persistency, and limiting effect of his symptoms. **Bjornson,** 671 F.3d at 645. This "backwards" reasoning alone is not reversible error so long as the ALJ follows it up

13

with an adequate "explanation for rejecting the claimant's testimony." *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). However, the court has found that the ALJ has failed to provide an adequate explanation for rejecting Ruiz's subjective complaints.

Next, Ruiz has argued that the ALJ violated the law of the case doctrine by relying on the same evidence that the court rejected in its September 17, 2015, Opinion and Order to assess Ruiz's RFC. The Commissioner has not presented any argument to the contrary.

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); **20 C.F.R. §§ 404.1545(a), 416.945(a).** The determination of a claimant's RFC is a legal decision rather than a medical one. **20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).** In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

**SSR 96-8p** (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir.

2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, he cannot ignore evidence that undermines his ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

In the September 17, 2015, Opinion and Order, the court held that there was an evidentiary deficit left by the ALJ's rejection of the state agency physicians' opinion, and therefore the ALJ improperly played doctor. *Ruiz,* 2015 WL 5474556, at *7. The court indicated that a new determination of Ruiz's RFC should be completed and reminded the ALJ of his duty to fully develop the record, including contacting physicians for clarification, such as inquiring into the limitations resulting from Ruiz's impairments as necessary. *Ruiz,* 2015 WL 5474556, at *7.

The Commissioner contends that substantial evidence supports the ALJ's RFC finding. However, the Commissioner did not address Ruiz's argument that the ALJ left an evidentiary deficit. The ALJ rejected the state agency physicians' opinions, "based on review of the totality of the evidence, including records received at the hearing." (Tr. 907). The ALJ found that the "combination of the claimant's physically severe impairments limit his exertional ability beyond the light exertional level," and "would also require greater postural limitations in light of his surgical history." (Tr. 907). The ALJ limitations were greater than those assigned by the state agency physicians.

15

However, the ALJ has failed to explain what opinions or evidence supported the RFC assessment. The ALJ has determined that Ruiz's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully consistent with the evidence. Also, the ALJ discounted the medical opinions that addressed Ruiz's specific physical limitations. Rather, the ALJ has provided a summary of the record, which has left unclear what he relied on in making the RFC. Therefore, the ALJ was left with an evidentiary deficit and was unable to build a logical bridge. As indicated in the remand order and as seen here, the court is concerned that the ALJ made his own independent medical judgments, which ALJ's are not permitted to do. *Ruiz,* 2015 WL 5474556, at *7; *Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 570 (7th Cir. 2003). Based on the above discussion, the RFC was not supported by substantial evidence.

Finally, Ruiz has argued that the ALJ failed to properly determine the onset date of his gastrointestinal impairments. On March 7, 2014, the Commissioner found Ruiz disabled beginning January 17, 2014, approximately 18 months after the date last insured. The Commissioner's finding indicated that Ruiz's disability met Listing 8.04. The ALJ indicated that the finding of disability does not have any bearing on the issue of disability on or before March 31, 2012. (Tr. 894). The ALJ noted that the medical evidence cited by medical consultant Fernando Montoya, M.D. that supported the finding of disability appeared to be from the years 2013 and 2014, and did not relate back to the period on or before the date last insured. (Tr. 894).

When determining a claimant's disability onset date, an ALJ is to consider: (1) the claimant's allegations as to the onset date; (2) the date that the claimant left work; and (3) medical evidence of onset. **SSR 83-20,** 1983 WL 31249, at *2 (1983). Medical evidence is the most important factor, and the chosen onset date must be consistent with it. *Henderson v. Apfel,*

179 F.3d 507, 513 (7th Cir. 1999) (citing **SSR 83–20);** *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991); *Lichter v. Bowen,* 814 F.2d 430, 434 (7th Cir. 1987)). The claimant's alleged onset date of disability "should be the starting point of the analysis, and that date 'should be used if it is consistent with all the evidence available.'" *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 353 (7th Cir. 2005) (citing **SSR 83–20** at *3). "The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in substantial gainful activity or gainful activity for a continuous period of at least 12 months." *Briscoe***,** 425 F.3d at 352 (quoting **SSR 83**–**20** at *3). When a claimant challenges the onset date selected by the ALJ, "the issue is whether there is substantial evidence in the record to support the date chosen by [the ALJ], not whether an earlier date could have been supported." *Henderson ex rel. Henderson v. Apfel***,** 179 F.3d 507, 512 (7th Cir. 1999) (quoting *Stein v. Sullivan***,** 892 F.2d 43, 46 (7th Cir. 1989)).

The Commissioner has argued that SSR 83-20 does not apply because the ALJ did not find Ruiz disabled. The Commissioner's argument is misplaced. Ruiz was found disabled beginning January 17, 2014. Therefore, the ALJ had access to this disability finding during the hearing. Ruiz has pointed to evidence in the record of ongoing gastrointestinal conditions dating before, during, and after the date last insured. For example, Ruiz has noted that he experienced abdominal pain due to diverticulitis, that there was objective imaging evidence of diverticulosis in November 2010, that he underwent a gastric biopsy because of abdominal pain in November 2010, and that he continued to experience abdominal pain after his date last insured prior to his surgeries.

Ruiz contends that the ALJ should have consulted with a physician to determine the severity of Ruiz's diverticulitis from his alleged onset date through his date last insured.

17

However, SSR 83-20 only suggests an ALJ should use a medical expert to assist inferring a disability onset date, and therefore does not require the ALJ to retain a medical expert's assistance when inferring a disability onset date. See **Eichstadt v. Astrue**, 534 F.3d 663, 667 (7th Cir. 2008) ("[SSR 83-20] describes something that the ALJ 'should' do, rather than something he 'must' do or 'shall' do, implying that the ultimate decision is up to the ALJ"). The ALJ has acknowledge that after the date last insured Ruiz's condition deteriorated. However, he has indicated that there was nothing in the record that supported an earlier date of disability. Specifically, the ALJ indicated that, "there is certainly no medical documentation of any diverticulitis exacerbation or prolonged treatment at the time for persistent, markedly limiting, or extreme effects of any GI problem." (Tr. 903). Therefore, the ALJ found that Ruiz was capable of gainful employment up and through March 2012.

However, as discussed above the record is devoid of medical opinion evidence as to the severity of Ruiz's gastrointestinal issues. Therefore, since the court has determined that the RFC was not supported by substantial evidence, the ALJ should apply the analytical framework outlined in SSR 83-20 to reconsider Ruiz's onset date.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this Order.

ENTERED this 28th day of March, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge